### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **DEBRA CADWELL,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **5:04-CV-72 (WDO)** |
| | : | |
| **GENERAL MOTORS CORP.,** | : | |
| | : | |
| **Defendant** | : | |

### ORDER

On March 7, 2002, Plaintiff Cadwell was driving a 1995 Chevrolet Blazer when she allegedly applied the brakes to avoid hitting another vehicle, lost control of her vehicle and hit a tree. The resulting accident totaled Plaintiff's vehicle and she suffered injuries to her neck, hip, hand and foot. On March 8, 2004, Plaintiff filed this products liability suit against General Motors alleging that her vehicle was defectively designed. The case is now before the Court on Defendant General Motors' motion to strike the Plaintiff's proposed expert. After a hearing on the Defendant's motion, the Court enters the following order.

The only expert witness designated by Plaintiff, Michael "Kerry" Jackson, proposes to testify that the airbag system in Plaintiff's vehicle should have deployed in the accident and if the airbag had deployed, Plaintiff would not have suffered the injuries she did. As for his opinions on the braking system, he opines that the hydraulic control unit and ABS sensors of the anti-lock brake system on the subject vehicle were missing but that the service brake system and parking brake system were functioning properly at the time of the accident. The Plaintiff has been

1

unclear about whether she intends to present his opinions on the braking system.  During the hearing, the Defendant stated that it had not challenged his opinions on the braking system because it was not of the opinion that Jackson was attempting to offer any.  For purposes of this order, and based on the testimony given in the hearing, the Court will assume that Jackson's proposed expert testimony involves his opinions about the design of the airbag system and the braking system.

Defendant filed a motion to exclude Jackson's opinions as not meeting the requirements of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) (setting forth requirements for reliability and admissibility of a proposed expert's opinion in a case involving scientific principles).  Defendant GM argues that Jackson is not qualified to offer his proposed opinions, that he failed to use any reliable methodology to reach his conclusions and that his proposed opinions are not based on the facts at issue in this case.  Defendant argues that although some 1995 Blazers exhibited a condition for which the vehicles were recalled, Jackson found no defect in the braking system of this particular vehicle.

To determine whether expert testimony is reliable and admissible, the Court must examine the factors and questions posed in Federal Rules of Evidence 104 and 702 and the Supreme Court's decisions in Daubert, 509 U.S. 579 and Kumho Tire v. Carmichael, 526 U.S. 137 (1999).  A district court is required to make pre-summary judgment and pre-trial Daubert and Kumho determinations of reliability.  See Rider v. Sandoz Pharmaceuticals Corp., 295 F.3d 1194 (11th Cir. 2002); Allison v. McGhan Medical Corp., 184 F.3d 1300 (11th Cir. 1999).  It is Plaintiff's burden to establish the admissibility of her proposed expert's opinions by a preponderance of the evidence.  Daubert, 509 U.S. at 593 n.10.

2

In Kumho, *supra*, the Supreme Court explained that the Daubert standards for expert

reliability apply to scientific and non-scientific expert opinions.  The non-exhaustive list of

factors a court should consider is whether a methodology has been tested, whether there has been

peer review of the opinions, whether there are error rates to the methodology and whether the

relevant community has accepted the proposed expert's opinions.  Kumho, 526 U.S. at 141.

These factors are a "flexible" test and a district court has broad latitude "when it decides how to

determine reliability as it enjoys in respect to its ultimate reliability determination."  Id. at 141-

42.  Essentially, a district court "is to make certain that an expert, whether basing testimony upon

professional studies or personal experience, employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field."  Id. at 151.

In one recent case, the Eleventh Circuit found the district court abused its discretion when

it failed to exclude evidence that did not satisfy Daubert and Kumho.  The district court held a

Daubert hearing and thereafter refused to exclude the evidence because the district court "lacked

sufficient knowledge on the scientific subject matter to exclude the testimony presented and that

Defendant had not produced competing testimony for it to determine that, as a matter of law,

testimony from Plaintiffs' experts was inadmissible."  McClain v. Metabolife, 401 F.3d 1233,

1237 (11th Cir. 2005).  A jury eventually found for the plaintiffs.  The court of appeals reversed

and held that the district court should have excluded the proferred expert's opinions based on the

expert's failure to establish any reliable methodology employed in reaching his conclusions.

Plaintiff Cadwell argues that Jackson's experience in the field and his repair certifications

by Defendant render him capable of offering opinions in this case.  Up until January of 2005,

Jackson was certified as an automobile technician in the areas of brakes, automatic and manual

transmissions, drive trains, engine performance and repair and an advanced level specialist certification which is still current.[1]  Further, Jackson was certified in the Supplemental Inflatable Restraint Systems through training at the GM training center in Atlanta, although he has worked on the diagnosis and repair of airbags on only 20 vehicles.

Although Jackson is by trade an automotive mechanic who has received some training on the repair of airbag systems, in his deposition he showed an inability to answer vital engineering questions on the design of the vehicle because he has not had any engineering or design training. For instance, Jackson does not understand the relevant velocity principles and that the longitudinal change in velocity of a vehicle is one of the factors that determine whether an airbag system will deploy.  Further, Jackson has not reviewed any articles about the design of airbag systems.  Before this case, Jackson had never performed a post-accident analysis of the performance of an airbag system in any type of vehicle.  In the relevant briefs, Defendant listed several specific items of information and areas of knowledge in which Jackson should be proficient but is lacking the requisite knowledge that would render him a reliable expert.  See R. at 15, p. 4.

Jackson's testimony, both in his deposition and from the Daubert hearing, show that he meets none of the Daubert factors for admissibility.  Because his methodology is unclear, there certainly is no evidence that his "method" has been tested and accepted in the relevant field.  His purported "methodology" was looking at the wrecked vehicle and noting that the airbag had not deployed and, based on how the vehicle looked, the airbag "should have" deployed.  However,

---

[1]According to his personal work history given in his deposition, Jackson has worked in various types of vehicle maintenance jobs since 1978.

this opinion was based on nothing more than his lay observer opinion derived from conversations with salespeople who had wrecked vehicles in the past. Jackson never performed a diagnostic evaluation of the airbag system on Plaintiff's vehicle and has never performed a post-accident analysis on any type of vehicle. He has never testified as an expert in any type of case. Jackson consistently answered vaguely or showed a complete inability to answer specific questions posed by defense counsel about how airbag systems and brake systems work and what causes the failure of those systems. In fact, Jackson testified that when he does repair work on airbags he follows step-by-step instructions from GM manuals. Jackson offers no more than the average lay person would know about an accident and the failure of either the airbag or braking systems to work properly. He admittedly does not know how the airbag sensors work, what type of force causes the deployment of an airbag or how to interpret data downloaded from vehicles to the diagnostic computers. Jackson admittedly has no medical training whatsoever and therefore has no basis for his opinions that with an airbag Plaintiff would not have received the injuries she did. Further, in the hearing, Plaintiff's counsel repeatedly asked Jackson what his opinions were "generally" about a specific topic, because Jackson was clearly unable to articulate specific "expert" opinions about anything in this case. In fact, Jackson actually testified that he does not have the education, training or experience to "form an opinion" on whether the design of this vehicle was defective.

Based on the foregoing, Plaintiff's expert should be stricken. He did not form his opinions based on a methodology that has been tested, or on any articulable methodology whatsoever. There has been no "peer review" of his opinions. Based on the type of testimony given, there are very likely error rates to his "methodology." Finally, there is no evidence that the

5

"relevant community" has accepted his proposed opinions.  Although these factors are a flexible

test, the Court is certain that Jackson's testimony will not employ in the courtroom the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field, the

design of braking and airbag systems.  Accordingly, Defendant's Motion to Strike Plaintiff's

expert Kerry Jackson is GRANTED.  The Court will exclude any testimony by Jackson related to

any aspect of any vehicle's design or the cause of or extent of Plaintiff's injuries.

**SO ORDERED this 27th day of October, 2005.**

**S/Wilbur D. Owens, Jr.**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**