IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **DEBRA CADWELL,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | 5:04-CV-72 (WDO) |
| | : | |
| **GENERAL MOTORS CORP.,** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

This product liability suit arises out of a March 7, 2002 single vehicle accident that occurred in Bibb County, Georgia. Plaintiff Debra Cadwell was driving a 1995 Chevrolet Blazer when she applied the brakes to avoid hitting another vehicle which allegedly caused her to lose control of her vehicle, run off the road and strike a telephone pole. Plaintiff claims the vehicle's braking system caused the vehicle to be defective and unreasonably dangerous. Plaintiff also claims that the air bags failed to deploy and failed to protect her from the injuries she suffered from the accident. Plaintiff asserts strict liability and negligence claims and seeks punitive damages. The matter is now before the Court on Defendant's motion for summary judgment.

Although Plaintiff retained an individual to offer expert opinions to support her claims, the Court struck the expert and his opinions as not meeting the Daubert-Kumho requirements for relevancy, reliability and admissibility. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993); Kumho Tire v. Carmichael, 526 U.S. 137 (1999). The only evidence now offered by the Plaintiff is that certain 1995 Chevrolet Blazers were recalled for possible problems in some of the vehicles related to the braking systems. Plaintiff also argues that the air bag system in her

1

vehicle was defective in that it did not deploy during the accident. General Motors contends the air bag was not designed to deploy at the particular speed and force of impact at which Plaintiff's vehicle hit the pole.

Defendant's expert provided an opinion on several factors relevant to the matters before the Court. See R. at 15, Ex. B. First, the expert found that the subject vehicle met and/or exceeded federal safety standards with regard to the "active restraint requirements." The computer generated information from the vehicle showed that the vehicle had never "been involved in any frontal accident severe enough to trigger the deployment of the air bag. Therefore, there was insufficient longitudinal deceleration on the vehicle during this incident involved in this case." The computer reading further indicated that no fault codes were present at the time of download and that the warning lamp was off for the previous 125 ignition cycles showing there were no malfunctions within the system. Defendant's expert also noted that, while Plaintiff complained of neck, hip, hand, lower back, knee and feet injuries from the accident, the air bag's function is to mitigate serious head and chest injuries.

Plaintiff did not present a legal challenge to Defendant GM's expert's findings or move to disqualify the GM expert. The Court hereby adopts and incorporates its previous order and finds that GM's expert and his report meet all of the Daubert-Kumho requirements for admissibility, relevance and reliability.

### *Summary Judgment Standard*

Because this case is before the Court on diversity jurisdiction, federal rules will apply to procedural matters such as the admissibility of evidence and the standard of review regarding the evidence presented. Heath v. Suzuki Motor Corp., 126 F.3d 1391 (11th Cir. 1997). "Under Rule

2

56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and . . . the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex v. Catrett, 477 U.S. 317, 322 (1986) (negligence, breach of warranty and strict liability claims based on plaintiff's exposure to products containing asbestos). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. The burden on the movant may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. Id. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327 (citing Fed. R. Civ. P. 1; 99 F.R.D. 465, 467 (1984)). Finally, summary judgment is appropriate where the causal connection between a defendant's conduct and the plaintiff's injury is too remote for the law to permit a recovery. See Tucker Federal Sav. & Loan Ass'n v. Balogh, 491 S.E.2d 915 (Ga. App. 1997).

*Strict Liability*

In Georgia

> The manufacturer of any personal property sold as new property directly or
> through a dealer or any other person shall be liable in tort, irrespective of privity,
> to any natural person who may use, consume, or reasonably be affected by the
> property and who suffers injury to his person or property because the property

3

>when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51-1-11(b)(1) (strict liability statute). "Strict liability is imposed for injuries which are the proximate result of product defects, not for the manufacture of defective products. Unless the manufacturer's defective product can be shown to be the proximate cause of the injuries, there can be no recovery." Talley v. City Tank Corporation, 279 S.E.2d 264, 269 (Ga. App. 1981). "Expert testimony is not always required to prove defect, but to obviate the need for an expert the defect must not be complicated and technical in nature." Bishop v. Bombardier, Inc., 399 F. Supp.2d 1372 (M.D. Ga. 2005) (citation omitted).

One of the principal cases applying this standard under Georgia law is Banks v. ICI Americas, Inc., 450 S.E.2d 671 (Ga. 1994) (risk-utility analysis is the appropriate standard for products liability cases). Banks was filed by the parents of a nine-year-old child who had died after eating rat poison. The Georgia Supreme Court held that "in design defect cases . . . the court is called upon to supply the standard for defectiveness: the term 'defect' in design defect cases is an expression of the legal conclusion to be reached, rather than a test for reaching that conclusion." Id. at 673 (citations omitted). This determination must incorporate a "balancing test whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product." Id. "[A]lthough the benefits of safer products are certainly desirable, there is a point at which they are *outweighed* by the cost of attaining them." Id. at 674. "[I]t is only at their most extreme that design defect cases reflect the position that a product is simply so dangerous that it should not have been made available at all," therefore "the reasonableness of choosing from among various alternative product designs and adopting the safest one if it is

feasible is considered the 'heart' of design defect cases." Id. "[L]iability for defective design attaches *only* when the plaintiff proves that the seller . . . failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product." Id. at n.4 (citation omitted). Finally, "under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury." Id. at 675. See also Timmons v. Ford Motor Company, 982 F. Supp. 1475 (S.D. Ga. 1997) (summary judgment granted for SUV manufacturer where design was not proximate cause of crash because driver was driving 100 miles per hour) (citing Banks).

Plaintiff's only argument in support of her design defect claim is that 1995 Chevrolet Blazers were subject to a recall regarding one component of the braking system. A recall letter alone is insufficient to create a jury issue regarding a product defect but may be relevant on the question of whether the defect was present when the product left the manufacturer. Rose v. Figgie Intern., Inc., 495 S.E.2d 77 (Ga. App. 1997) (citation omitted). See also Cooper Tire & Rubber Co. v. Crosby, 543 S.E.2d 21 (Ga. 2001) (in products liability cases, plaintiff must show there is a substantial similarity between the other transactions, occurrences, or claims and the claim at issue in the litigation and the showing must include a showing of similarity as to causation).

The 1995 Chevrolet Blazers were within the population of vehicles subject to a recall because of problems discovered in some of the vehicles where, when they were driven in the two-wheel drive mode, a switch could malfunction and send an incorrect signal to the ABS module which could result in a vehicle crash where minimum stopping distance was required. Plaintiff argues that IF her vehicle had this malfunction it COULD HAVE caused her collision.

However, Plaintiff presented no evidence that the accident was caused by a defect in the vehicle's braking system that was present when the truck left GM's control.  Plaintiff also failed to present evidence that a safer design was available to GM that would have prevented the accident in question.  Defendant GM is therefore entitled to summary judgment on Plaintiff's strict liability claims.

### *Negligence*

In Banks, *supra*, the Georgia Supreme Court noted there are substantial similarities between a strict liability claim involving an allegedly defectively designed product and a related negligence claim.  Banks, 450 S.E.2d at 674 n.3.  The court did not elaborate on how it would legally distinguish such claims but merely held the two theories do not "merge in design defect cases."  Id.  In Carmical v. Bell Helicopter, the Eleventh Circuit Court of Appeals held that to "prevail in a Georgia products liability action, whether based on negligence or strict liability, a plaintiff must show that the proximate cause of the injury was a defect which existed when the product was sold."  Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 494 (11th Cir. 1997) (summary judgment for defendant where plaintiff failed to produce evidence that crash was proximately caused by a defect in the helicopter and failed to rebut defendants' argument that crash was proximately caused by plaintiff's negligence).

> Negligence is not to be presumed, but is a matter for affirmative proof.  The expression res ipsa loquitur means that the transaction speaks for itself.  It is a rule of evidence which allows an inference of negligence to arise from the happening of an event causing an injury to another where it is shown that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage and the accident was a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence.  The principal basis for application of the rule of res ipsa loquitur is that the occurrence involved would not have occurred but for negligence, and this negligence may properly be charged to the person in

exclusive control of the instrumentality.

Williams v. American Medical Systems, 548 S.E.2d 371, 375 (Ga. App. 2001) (citations and punctuation omitted).

Plaintiff asks the Court to presume negligence on GM's part because she would not have been in an accident if the vehicle had not been defectively designed. Her "res ipsa" argument cannot stand because she failed to show that GM owned, operated, maintained, controlled or was responsible for the management and maintenance of her particular vehicle that was seven years old at the time of the accident. Plaintiff therefore failed to show that the accident would not have occurred but for GM's alleged negligence. Finally, Plaintiff failed to present evidence that her vehicle had any type of design defect or that any such defect was the proximate cause of her accident. Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligence claims.

### *CONCLUSION*

Plaintiff had ample opportunity, almost three months, after the Court struck her expert to obtain another expert or to produce some type of evidence in support of her claims. However, Plaintiff produced nothing to support her claims and Defendant GM is entitled to summary judgment on all claims. Anderson v. Raymond Corp., 340 F.3d 520, 525 (8th Cir. 2003).

**SO ORDERED this 25th day of January, 2006.**

S/
**WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**